**In re AMERICA WEST AIRLINES, INC., a Delaware Corporation, Debtor.**

**AMERICA WEST AIRLINES, INC., Plaintiff,**

v.

**CITY OF PHOENIX, ARIZONA, Defendant.**

**Bankruptcy No. B–91–07505–PHX–RGM. Adversary No. 96–00065.**

United States Bankruptcy Court, D. Arizona.

Aug. 14, 1997.

Carl A. Ecklund, John C. Parks, Annette W. Jarvis, LeBoeuf, Lamb, Greene & MacRae, Denver, CO, Charles R. Sterbach, Gallagher & Kennedy, Phoenix, AZ (local counsel), for America West Airlines.

Mark N. Nadeau, Jane C. Fennelly, Rawle Andrews, Jr., Squire, Sanders & Dempsey, Phoenix, AZ, for City of Phoenix.

Brenda Moody Whinery, Ryley, Carlock & Applewhite, Phoenix, AZ, Melissa K. Forbes, Murphy, Weir & Butler, San Francisco, CA, Co–Counsel for Official Unsecured Creditors Committee.

Sander L. Esserman, Stutzman & Bromberg, Dallas, TX, for Texas Commerce Bank.

Christopher J. Pattock, Phoenix, AZ, U.S. Trustee's Office.

ORDER APPROVING REVISED SETTLEMENT AGREEMENT REGARDING CLAIM NOS. 692, 2691 AND ALL OTHER PRE–PETITION CLAIMS HELD BY THE CITY OF PHOENIX, ARIZONA

ROBERT G. MOOREMAN, Bankruptcy Judge.

This matter is before the Court pursuant to Debtor's Motion for Leave to Compromise Controversy and for Approval of Settlement Agreement Regarding Claim Nos. 692, 2691 and Any and All Other Claims Held by the City of Phoenix, Arizona ("Motion to Approve Settlement") and the Responses thereto filed by the Official Unsecured Creditor's Committee and Texas Commerce Bank, acting as the Indenture Trustee. A hearing was held May 29, 1997 after which the matter was taken under advisement. After due consideration of the pleadings, the record

herein, and under the present posture of the case, the Court finds and concludes the following in making its decision.

1. The Debtor filed for protection under Chapter 11 of the Bankruptcy Code on June 27, 1991.

2. The Debtor's Plan of Reorganization was confirmed on August 10, 1994.

3. The Plan provided that the Bankruptcy Court would retain exclusive jurisdiction over the Chapter 11 case for "all legally permissible purposes" including, without limitation a number of specifically enumerated post-confirmation matters, including:

(e) to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or in connection with the obligations of the Debtor, NewA-WA or AmWest under the Plan, or in connection with the performance of any Distribution Agent of its duties hereunder, and to enter such orders as may be necessary or appropriate to implement any distributions to holders of Allowed General Unsecured Claims;

. . . .

(1) to hear and determine any dispute or controversy relating to any Allowed Claim or any Claim alleged or asserted by any Person to be an Allowed Claim;

. . . .

(n) to determine any issues arising in connection with elections made on a Ballot by a holder of a Claim or Equity Interest.

See Confirmed Plan of Reorganization, Section 13.1

4. The City of Phoenix ("Phoenix") filed a timely Proof of Claim, Claim No. 692, on October 9, 1991 in the amount of $958,740.09. Claim No. 692 asserted a priority claim in the amount of $601,216.22 for "Privilege License (Sales) or Use Tax" for the period of October 1985 through August 1989, a priority claim in the amount of $259,844.78 for prepetition interest on such taxes, and a general unsecured claim in the amount of $97,639.09 for pre-petition penalties relating to the claimed taxes.

5. Phoenix filed a second timely Proof of Claim, Claim No. 2691, on February 27, 1992 in the amount of $566,744.03. Claim No. 2691 consisted of an asserted priority claim in the amount of $441,723.76 for "Privilege License (Sales) or Use Tax" for the period of September 1989 through June 25, 1991, and asserted priority claim of $42,122.29 for pre-petition interest on such taxes, and an asserted general unsecured claim of $82,927.98 for pre-petition penalties related to the claimed taxes.

6. Phoenix completed a Ballot for Claim No. 692 to accept the Plan. The Ballot indicates that Phoenix elected to become an Electing Unsecured Creditor under provision 3.5.2 of the Plan. The Ballot indicates that the amount of the general unsecured Class 5 claim is $97,639.09.

7. Provision 3.5.2 of the Plan allows general unsecured creditors an opportunity to make an irrevocable cash election on their Ballots for the full amount of their unsecured claim. The election allows the general unsecured creditor to choose to receive a cash distribution of $8.889 per share of stock that the creditor normally would have received as a Class 5 claimant.

8. The Debtor did not object to Phoenix's claims until after confirmation of the Plan of Reorganization. The Debtor filed its original objection to Phoenix's claims on November 22, 1994. The Debtor filed a second objection to Phoenix's claims on October 23, 1996.

9. The Debtor and Phoenix began negotiations in the fall of 1996 in order to settle the dispute over the amount of the Phoenix claims. The Debtor offered to settle Phoenix's tax claims through the allowance of a general, unsecured Class 5 claim and the allowance of a priority tax claim. The Official Committee of Unsecured Creditors was apprised of the settlement negotiations. The resulting settlement agreement between the Debtor and Phoenix sought to resolve the two claims filed by Phoenix. The settlement agreement, as originally drafted, provided that Claim No. 692 would be allowed as a pre-petition general unsecured Class 5 claim in the amount of $346,805.00 and Claim No. 2691 would be allowed as a pre-petition, priority tax claim in the amount of $333,435.00.

It was further agreed that the Distribution Agent would sell the shares of stock that would otherwise be distributed and then transfer the net proceeds to Phoenix.

10. After the Original Settlement Agreement was circulated for signature on February 18, 1997, the Official Unsecured Creditor's Committee became aware that Phoenix had made a cash election on the Ballot filed for Claim No. 692, pursuant to section 3.5.2 of the Plan of Reorganization.

11. Upon the discovery that Phoenix had made the cash election on its Ballot for Claim No. 692, the Indentured Trustee and the Official Unsecured Creditors Committee took the position, pursuant to section 3.5.2 of the confirmed Plan, that the cash election was "irrevocable and must pertain to the entire amount of such holders of General Unsecured Claim," and that the cash election made by Phoenix applies to any and all of the general unsecured Class 5 claim that may be allowed.

12. Because of the divergent positions taken by the Indenture Trustee and the Official Unsecured Creditors Committee relative to the position taken by the Debtor and Phoenix, the Debtor filed a Request for an Interim Order requesting that the Court rule on the effect of the election made on Phoenix's Ballot for Claim No. 692 had regarding its right to receive shares of stock on any allowed general unsecured Class 5 claim as later negotiated by the parties. The Debtor suggested that if the Court ruled in favor of Phoenix, then the Debtor believed that the Settlement Agreement could be fully executed and the settlement consummated; if the Court ruled against Phoenix, then the parties would need to either return to the negotiations, or proceed with trial. Phoenix also filed a Motion to Enforce Settlement Agreement Regarding Claim Nos. 692, 2691, and Any and All Other Pre–Petition Claims Held by the City of Phoenix. Phoenix requested that the Court enforce the Original Settlement Agreement circulated by the parties.

13. The Court set both the Debtor's Request for Interim Order and Phoenix's Motion to Enforce Settlement for hearing on May 29, 1997.

14. Phoenix and the Debtor engaged in further negotiations after the matters were set for hearing resulting in the Revised Settlement Agreement, which is presently before the Court. The Revised Settlement Agreement resolved Claim Nos. 692, 2691, and any and all other pre-petition claims held by Phoenix, and also resolves the controversies raised by the Request for Interim Order and Motion to Enforce Settlement.

15. The Revised Settlement Agreement provides that Claim No. 692 be allowed as a pre-petition, general unsecured Class 5 claim in the amount of $346,805.00 and Claim No. 2691 be allowed as a pre-petition tax claim in the amount of $333,435.00.

Under the Original Settlement Agreement, Phoenix would be paid a distribution of 29,761 shares of stock; under the Revised Settlement Agreement, Phoenix receives 26,761 shares of stock and in lieu of the 3,000 fewer shares, Debtor will also pay Phoenix $45,000 in cash.

16. The Official Unsecured Creditors Committee and the Indenture Trustee have filed separate objections to the settlement. Both parties argue that the Court should not approve the settlement for three reasons: 1) Phoenix, through it's ballot on Claim No. 692 elected to receive a cash distribution of $8.889 per share, the election applies to all of a creditor's general unsecured Class 5 allowed claim and is irrevocable under the Plan, and therefore the settlement impermissibly allows Phoenix to receive more than it would be entitled to under the Plan; 2) the settlement should be denied because the changing of Phoenix's priority claim under Claim No. 692 to a general unsecured claim in effect results in a new claim being filed after the bar date; and 3) to the extent that Phoenix has a claim for any taxes, interest and penalties, these are priority claims and cannot be re-classified as general unsecured claims.

In resolving this dispute the Court finds and concludes that the confirmed Plan of Reorganization reserved jurisdiction for the Bankruptcy Court to hear post-confirmation matters. The pending matter before the Court involves the Motion to Approve the

Settlement, as revised by the parties, regarding Phoenix's claims against the Debtor. It has been held that the Court has great latitude in approving a compromise agreement, but may approve such compromise only if the settlement agreement is fair and equitable. *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir.1988) (*citing Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380–81 (9th Cir.), *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986)). The Court herein finds and concludes that the settlement agreement reached between the Debtor and Phoenix resolving the disputed claims herein is both fair and equitable and also is in the best interests of the estate. The law favors compromise. *In re A.C. Properties*, 784 F.2d at 1381. While objections to the proposed compromise are to be considered by the court, such objections in themselves are not controlling and the court must also weigh certain factors to determine whether the compromise is in the best interest of the bankruptcy estate. *Id.*, 784 F.2d at 1382. In the decision to approve a proposed settlement agreement under Rule 9019, the Court considers the factors set forth in the *Woodson* case, cited above. The *Woodson* factors are:

a) the probability of successful litigation;

b) impediments, if any, to collection;

c) the complexity, expense, inconvenience, and delay of litigation; and

d) the interests of the creditors with deference to their reasonable opinions.

*Id.*, 839 F.2d at 620.

The first factor is the probability of successful litigation. In this case, as in most, the probability of successful claim litigation is uncertain at best. Here, this settlement will go far in placing the case ready for final distribution to be made and allow for the final closing of the Chapter 11 Bankruptcy case, which has been pending in this Court for more than six years. In light of the present posture of this case with a confirmed Plan, the Court finds and concludes that the probability of successful claims litigation is uncertain and will require a large amount of time, resources and expense by the parties. The Court finds and concludes on this record

and the posture of this case towards a consummated Plan that the first factor weighs in favor of approval of the settlement.

The second factor is whether there are any impediments to collection. Because the stipulation deals with the treatment of the Phoenix's claims under the Plan, the Court knows of no impediment to collection. Phoenix will receive what it has bargained for in accordance with the terms of the Revised Settlement Agreement as they apply under the Debtor's confirmed Plan. The Court therefore finds and concludes that the collectability of a future judgment is not an issue in the present situation.

The third factor is the complexity, expense, inconvenience and delay of litigation. The settlement of the claim accomplishes many things for the Debtor, the estate, and creditors. The cost and complexity involved with continuing the litigation of the disputed Phoenix claims is apparent herein. The Debtor, by settling the dispute at this time, is able to conserve for the Bankruptcy estate not only the further expense and uncertainty of the claims litigation, but also the Debtor is able to assure a definite amount to be paid for resolution of the Phoenix claims for substantially less than the Proofs of Claim filed of record by Phoenix. The Court also notes, as previously stated, that any delay in resolving the Phoenix claims will further delay the final distribution and will hold up the final closing of this case, which has been pending for more than six years and in fact, upon the resolution of this matter, the Court anticipates the case to be closed in the foreseeable future. The Court therefore finds and concludes that the third factor weighs in favor of settlement.

The fourth factor is the interests of the creditors with deference to their reasonable opinions. The Court notes that both the Indentured Trustee and the Official Unsecured Creditors Committee have performed exemplary services in this complex case to reach this stage of final consummation. However, here the objections to the proposed settlement are not well supported in this dispute.

The Court finds and concludes that Phoenix timely filed claims in excess of $1.52 million dollars, with a substantial amount of Claim Nos. 692 and 2691 representing priority claims for taxes. The priority portion of the City of Phoenix claim, as represented in the two Proofs of Claim exceed $1.34 million dollars ($1,042,939.98 principal plus $302,007.07 interest). The Revised Settlement resolves all claims that the City of Phoenix has against the Debtor by way of a priority claim in the amount of $333,435.00 for Claim No. 2691 and a general unsecured claim of $346,805.00 for Claim No. 692. Claim No. 692 is to be paid through a distribution of 26,761 shares allocated to Class 5 under the confirmed Plan. In lieu of an agreed reduction of 3,000 shares, the Debtor will pay the City of Phoenix $45,000.00, in addition to the 26,761 shares. Upon the record before the Court it appears that it is undisputed that, at most, the impact of the proposed settlement is that creditors would receive $0.0015 less per dollar of claim than if the Debtor prevailed on all issues resolved by the settlement and Phoenix's claims were disallowed in their entirety as Class 5 claims. The Court further finds and concludes that the settlement of the Phoenix claims against the Debtor do not assert a new claim and the Bankruptcy Code does not prohibit the settlement, as proposed; as noted, the impact upon the other unsecured creditors in Class 5 is *de minimus*. The Court therefore finds and concludes that the fourth factor weighs in favor of approving the settlement.

The Court finds and concludes that the settlement of Phoenix's claims is permissible under the Bankruptcy Code and that it is fair and equitable, given the circumstances of this case, and that it will benefit the estate. Therefore, the Court finds and concludes that the proposed settlement meets the *Woodson* requirements, and the Court hereby approves the Revised Settlement Agreement entered into between the Debtor and Phoenix.

Accordingly,

IT IS ORDERED approving the Revised Settlement Agreement entered into between the Debtor and the City of Phoenix to resolve the City of Phoenix's disputed claims;

IT IS SO ORDERED as a final order herein.